Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/29/2021 08:09 AM CDT

Julie Edwards, appellant, v. Douglas County,
a political subdivision of the State
of Nebraska, appellee.

___ N.W.2d ___

Filed January 29, 2021.    No. S-19-1195.

1. **Political Subdivisions Tort Claims Act.** Whether the allegations made by a plaintiff set forth claims which are precluded by exemptions under the Political Subdivisions Tort Claims Act presents a question of law.

2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** Through the Political Subdivisions Tort Claims Act, the Legislature has allowed a limited waiver of a political subdivision's sovereign immunity with respect to some, but not all, types of tort claims.

5. ____: ____: ____. Neb. Rev. Stat. § 13-910 (Reissue 2012) of the Political Subdivisions Tort Claims Act expressly exempts certain types of tort claims from the limited waiver of sovereign immunity. Stated differently, the exemptions in § 13-910 describe the types of tort claims for which a political subdivision has not consented to be sued.

6. **Political Subdivisions Tort Claims Act: Dismissal and Nonsuit: Immunity.** When an exemption under the Political Subdivisions Tort Claims Act applies, the political subdivision is immune from the claim and the proper remedy is to dismiss it for lack of subject matter jurisdiction.

7. **Political Subdivisions Tort Claims Act: Jurisdiction: Summary Judgment.** Because it is jurisdictional, courts should determine the applicability of a statutory exemption under the Political Subdivisions

Tort Claims Act before considering nonjurisdictional grounds for summary judgment.

8. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.

9. **Statutes: Immunity: Waiver.** Statutes that purport to waive the protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.

10. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** In order to strictly construe the Political Subdivisions Tort Claims Act against a waiver of sovereign immunity, courts apply a broad reading to any statutory exemptions from a waiver of sovereign immunity.

11. **Statutes: Immunity: Waiver.** A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.

12. **Political Subdivisions Tort Claims Act: Assault.** No matter how a tort claim against the government is framed, when it seeks to recover damages for personal injury or death stemming from an assault, the claim necessarily "arises out of assault" and is barred by the intentional tort exemption under the Political Subdivisions Tort Claims Act.

13. **Political Subdivisions Tort Claims Act: Pleadings: Assault.** Plaintiffs cannot circumvent the assault and battery exemption under the Political Subdivisions Tort Claims Act through artful pleading.

14. **Courts: Immunity: Waiver.** No matter how compelling the facts of a particular case may be, the judiciary does not have the power to waive sovereign immunity.

15. **Constitutional Law: Political Subdivisions Tort Claims Act: Courts: Legislature.** Neb. Const. art. II, § 1, precludes courts from exercising powers belonging to the Legislature, and decisions on whether and how to limit the government's potential tort liability belong to the Legislature.

16. **Courts: Legislature: Immunity.** Courts must not, through judicial construction, usurp the Legislature's role in drawing the line between governmental liability and immunity.

17. **Political Subdivisions Tort Claims Act.** The Political Subdivisions Tort Claims Act provides the exclusive means by which to maintain a tort claim against a political subdivision or its employees.

18. **Immunity: Waiver.** The language of Neb. Rev. Stat. § 86-441 (Reissue 2014) is not a waiver of sovereign immunity.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed.

Gretchen L. McGill, Heather S. Voegele, and Brenda K. Smith, of Dvorak Law Group, L.L.C., for appellant.

Jimmie L. Pinkham III and William E. Rooney III, Deputy Douglas County Attorneys, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

In 2016, Julie Edwards was held hostage and sexually assaulted by a former boyfriend. In 2017, Edwards sued Douglas County under the Political Subdivisions Tort Claims Act (PSTCA)[1], alleging the county negligently handled a series of 911 calls and, as a result, emergency personnel did not arrive in time to prevent or stop the sexual assault. The district court granted summary judgment in favor of Douglas County and dismissed the action, finding the county owed no legal duty to Edwards. We affirm the judgment of dismissal, but do so on grounds of sovereign immunity.

## BACKGROUND

### Assault and 911 Calls

Edwards and Kenneth Clark were involved in a dating relationship and resided together in Omaha, Nebraska. Edwards ended the relationship, and on February 12, 2016, she went to Clark's home to retrieve her belongings, accompanied by her brothers John Edwards and Jason Edwards.

As Edwards and her brothers were leaving Clark's home with the final box, Clark fired several gunshots, striking both John and Jason. Edwards tried to escape, but Clark dragged her back into the home. Once inside, Edwards saw that Jason

---

[1] Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2012).

was on the floor bleeding and that John was moving toward the basement. Edwards heard John saying he was hurt and needed help. She later heard John's cell phone ring from the basement, and she could hear John speaking, but could not make out his words.

Eventually Clark zip-tied Edwards' hands and feet, confiscated her cell phone, and held her hostage in the home. Thereafter, Clark took Edwards to an upstairs bedroom where he sexually assaulted her. Edwards estimates the sexual assault began roughly 20 to 30 minutes after the shooting; the shooting occurred shortly before 10 a.m.

It is undisputed that while Edwards was being held hostage, John called the Douglas County 911 call center from the basement of Clark's home. The first call was placed at approximately 10:12 a.m., and, over the course of several more phone calls, John reported that he had been shot by his sister's ex-boyfriend "Ken Clark" and needed help. John told 911 that he was inside Clark's house, but was not able to provide a street address. John reported that Clark was still inside the house, that Clark had a gun, and that Edwards was being held hostage in the house. The final call between John and the 911 call center was placed at approximately 10:33 a.m.

At approximately 10:54 a.m., law enforcement was dispatched to Clark's residence. They arrived at approximately 10:58 a.m., after which Clark stopped assaulting Edwards but continued to hold her hostage. Clark eventually released Edwards sometime before 2 p.m. and then took his own life. Both John and Jason died from injuries sustained in the shooting.

## LAWSUIT

On October 2, 2017, after complying with the presuit notice requirements under the PSTCA, Edwards filed a negligence action against Douglas County, seeking to recover damages for personal injury. Her complaint alleged that Douglas County

"had a duty to provide and maintain a 911 service system utilizing reasonable care" and had breached that duty by mishandling the 911 calls with John. Edwards alleged that as a result of the county's negligence, emergency personnel did not arrive at Clark's home in a timely manner, which caused her to "continu[e] to be held hostage and [to be] sexually assaulted at gunpoint."

In its operative amended answer, Douglas County specifically denied that it failed to use reasonable care in handling the 911 calls. The county affirmatively alleged that Edwards' complaint failed to state a claim of negligence against the county, but it did not expressly allege that Douglas County was immune from suit under the PSTCA.

### SUMMARY JUDGMENT

After conducting discovery, both Douglas County and Edwards moved for summary judgment. Douglas County claimed it was entitled to summary judgment because, among other things, it owed Edwards no legal duty to protect her from the assault by Clark. Edwards argued she was entitled to partial summary judgment in her favor on the issues of legal duty and breach. A single hearing was held on the competing summary judgment motions. Exhibits were offered by both parties and received without objection.

Before the district court, the parties primarily focused their arguments on questions of legal duty. Douglas County argued it had no duty to protect Edwards from the assault by Clark. Edwards disagreed, arguing that a legal duty arose under Nebraska's Emergency Telephone Communications Systems Act (ETCSA).[2] Edwards argued, summarized, that the ETCSA authorized Douglas County to provide 911 services and imposed a statutory duty of reasonable care in contracting for and providing such services.

---

[2] Neb. Rev. Stat. §§ 86-420 to 86-441.01 (Reissue 2014).

In an order entered November 21, 2019, the district court rejected Edwards' contention that the ETCSA imposed a legal duty on the county. After analyzing and rejecting other legal theories under which the county may have had a duty to protect Edwards from the assault by Clark, the court sustained the county's motion for summary judgment and overruled Edwards' motion for partial summary judgment. Edwards filed a timely notice of appeal, which we moved to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Edwards assigns eight errors, which we consolidate and restate into two: (1) The district court erred in granting Douglas County's motion for summary judgment on the ground the county did not owe Edwards a legal duty, and (2) the district court erred in overruling Edwards' motion for partial summary judgment.

## STANDARD OF REVIEW

[1] Whether the allegations made by a plaintiff set forth claims which are precluded by exemptions under the PSTCA presents a question of law.[3]

[2] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[4]

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[5]

---

[3] See, *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020); *Rutledge v. City of Kimball*, 304 Neb. 593, 935 N.W.2d 746 (2019).

[4] See *Moser, supra* note 3.

[5] *Id.*

## ANALYSIS

### SUBJECT MATTER JURISDICTION
### UNDER PSTCA

Shortly before the scheduled oral argument in this appeal, Douglas County moved for summary dismissal or, in the alternative, summary affirmance, claiming we lack subject matter jurisdiction over Edwards' claim under the PSTCA. The county contends, summarized, that Edwards' claim is barred by sovereign immunity because the PSTCA's exemption for claims "arising out of assault"[6] applies. In support of its argument, the county relies on this court's recent opinion in *Moser v. State*,[7] which was released after the initial briefing in this case was complete. Edwards filed a brief in opposition to the county's motion, and we deferred ruling on the motion until plenary submission.

Because the county's motion presents a question of subject matter jurisdiction under the PSTCA, we address it as a threshold matter.[8] No party raised the applicability of any exemption under the PSTCA while this case was before the district court, but whether an exemption applies presents a jurisdictional issue which may be raised for the first time on appeal.[9] Simply put, a political subdivision's sovereign immunity from suit is a jurisdictional issue that an appellate court cannot ignore.[10]

---

[6] § 13-910(7).

[7] *Moser, supra* note 3.

[8] See *Lambert v. Lincoln Public Schools*, 306 Neb. 192, 945 N.W.2d 84 (2020) (explaining because question is jurisdictional, courts should determine applicability of statutory exemptions under PSTCA before considering nonjurisdictional grounds for summary judgment).

[9] *Moser, supra* note 3. See, also, *Amend v. Nebraska Pub. Serv. Comm.*, 298 Neb. 617, 905 N.W.2d 551 (2018).

[10] See *Moser, supra* note 3. Accord *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017).

The sovereign immunity of the State and its political subdivisions is not a matter of judicial fiat; it is constitutional. Neb. Const. art. V, § 22, provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." Earlier versions of our state constitution did likewise.[11] We have long held that this constitutional provision is not self-executing and that no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided.[12] The Legislature has enacted the PSTCA to govern tort claims against political subdivisions.

[4] Under the PSTCA, a political subdivision has no liability for the torts of its officers, agents, or employees, "except to the extent, and only to the extent, provided by the [PSTCA]."[13] In suits brought under the PSTCA, a political subdivision is "liable in the same manner and to the same extent as a private individual under like circumstances," except "as otherwise provided in the [PSTCA]."[14] Through the PSTCA, the Legislature has allowed a limited waiver of a political subdivision's sovereign immunity with respect to some, but not all, types of tort claims.[15]

[5-7] Section 13-910 of the PSTCA expressly exempts certain tort claims from the limited waiver of sovereign immunity. Stated differently, the exemptions in § 13-910 describe the types of tort claims for which a political subdivision has not consented to be sued. When an exemption under the

---

[11] See *State v. Mortensen*, 69 Neb. 376, 95 N.W. 831 (1903).

[12] See, e.g., *Burke v. Board of Trustees*, 302 Neb. 494, 924 N.W.2d 304 (2019); *McKenna v. Julian*, 277 Neb. 522, 763 N.W.2d 384 (2009), *abrogated in part, Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010), *overruled, Davis, supra* note 10.

[13] § 13-902. See *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011).

[14] § 13-908.

[15] See *Rutledge, supra* note 3.

PSTCA applies, the political subdivision is immune from the claim and the proper remedy is to dismiss it for lack of subject matter jurisdiction.[16] Because it is jurisdictional, courts should determine the applicability of a statutory exemption under the PSTCA before considering nonjurisdictional grounds for summary judgment.[17]

## Immunity for Claims Arising Out of Assault

As pertinent here, § 13-910(7) of the PSTCA exempts from the waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." We have sometimes referred to this exemption broadly as the "intentional tort" exemption.[18] And because the language of the intentional tort exemption is nearly identical under both § 13-910(7) of the PSTCA and Neb. Rev. Stat. § 81-8,219(4) (Reissue 2014) the State Tort Claims Act (STCA),[19] we have applied our cases construing the exemption under the PSTCA to cases under the STCA, and vice versa.[20]

[8-11] When construing any statutory exemption under the PSTCA or the STCA, courts apply settled propositions of statutory construction. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.[21] Additionally, Nebraska

---

[16] See *Lambert, supra* note 8.

[17] *Id.*

[18] See, e.g., *Moser, supra* note 3; *Rutledge, supra* note 3; *Britton, supra* note 13.

[19] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014).

[20] See, *Moser, supra* note 3; *Amend, supra* note 9.

[21] *Moser, supra* note 3.

courts have long followed the rule that statutes purporting to waive the protection of sovereign immunity are to be strictly construed in favor of the sovereign and against waiver.[22] As a corollary to this canon of construction, and in order to strictly construe the PSTCA against a waiver of sovereign immunity, we apply a broad reading to statutory exemptions from a waiver of sovereign immunity.[23] A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[24]

Over the past 15 years, this court has issued five published opinions addressing the meaning and scope of the phrase "[a]ny claim arising out of assault" as used in the intentional tort exemptions of the PSTCA and the STCA.[25] When analyzing this language, most of our cases have given the phrase its plain meaning and faithfully applied principles of strict construction to avoid judicially expanding the Legislature's

---

[22] See, e.g., *id.*; *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020); *Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017); *Geddes v. York County*, 273 Neb. 271, 729 N.W.2d 661 (2007); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994); *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984); *Gentry v. State*, 174 Neb. 515, 118 N.W.2d 643 (1962); *Rumbel v. Ress*, 166 Neb. 839, 91 N.W.2d 36 (1958), *modified on denial of rehearing* 167 Neb. 359, 92 N.W.2d 904; *Frye v. Sibbitt*, 145 Neb. 600, 17 N.W.2d 617 (1945); *Anstine v. State*, 137 Neb. 148, 288 N.W. 525 (1939), *overruled on other grounds, Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985).

[23] See, *Brown, supra* note 22; *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019); *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015).

[24] *Moser, supra* note 3; *Jill B. & Travis B., supra* note 22.

[25] See, e.g., *Moser, supra* note 3; *Rutledge, supra* note 3; *Britton, supra* note 13; *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007), *overruled, Moser, supra* note 3; *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005).

limited waiver of sovereign immunity.[26] Some of our cases have considered U.S. Supreme Court opinions construing the Federal Tort Claims Act (FTCA), which also excludes certain intentional torts, including assault, from the federal government's waiver of sovereign immunity.[27] But we have not always agreed with the reasoning of the U.S. Supreme Court majority,[28] in part because that Court does not always adhere to the same strict construction principles this court follows when construing statutes purporting to waive sovereign immunity.[29] And of course, neither the reasoning nor the holdings of federal cases construing the FTCA have any binding precedential effect on this court's construction of Nebraska's statutory language.

---

[26] See, *Moser, supra* note 3 (applying strict construction principles to determine scope of assault and battery exemption); *Rutledge, supra* note 3 (same); *Britton, supra* note 13 (same); *Johnson, supra* note 25 (same). Compare *Doe, supra* note 25 (making no reference to strict construction principles when determining scope of assault and battery exemption).

[27] See 28 U.S.C. § 2680(h) (2018).

[28] See, e.g. *Moser, supra* note 3 (rejecting reasoning of U.S. Supreme Court majority and agreeing instead with reasoning of dissent in *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988)); *Johnson, supra* note 25 (agreeing with reasoning of *Sheridan* concurrence rather than majority).

[29] See, *Moser, supra* note 3 (observing U.S. Supreme Court does not uniformly apply strict construction principles to waivers of sovereign immunity under FTCA); *Davis, supra* note 10, 297 Neb. at 974, 902 N.W.2d at 183 (observing U.S. Supreme Court "has refused to hold that the FTCA exceptions are subject to the general rule that a waiver of sovereign immunity will be strictly construed in favor of the sovereign"). See, also, 14 Charles Alan Wright et al., Federal Practice and Procedure § 3658.2 at 688 (4th ed. 2015) (observing that when interpreting scope of exceptions to waivers of sovereign immunity under FTCA, the U.S. Supreme Court has said rules of strict construction are not implicated and "'unhelpful'" to inquiry); Gregory C. Sisk, *Twilight for the Strict Construction of Waivers of Federal Sovereign Immunity*, 92 N.C. L. Rev. 1245 (2014) (same).

Before addressing the arguments advanced by the parties in this appeal, it is helpful to review our previous opinions construing the scope and meaning of the intentional tort exemption. In the 2005 case of *Johnson v. State*,[30] a prisoner brought a tort action against the State, seeking to recover damages for personal injury after being sexually assaulted by a prison guard. The trial court found that her claim arose out of an assault and was barred by sovereign immunity. On appeal, the prisoner argued that her claim did not arise out of assault, but instead arose from independent acts of governmental negligence that allowed the assault to occur, including the State's negligent hiring and supervision of the prison guard. Applying principles of strict construction, *Johnson* held that even though the claim had been framed as the negligent failure to prevent an assault, it fell squarely within the intentional tort exemption. *Johnson* agreed with Justice Kennedy's concurrence in the U.S. Supreme Court case of *Sheridan v. United States*,[31] quoting:

"If the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception . . . bars the claim. Otherwise, litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisors. To allow such claims would frustrate the purposes of the [intentional tort] exception."[32]

*Johnson* also quoted the reasoning of four U.S. Supreme Court justices in *United States v. Shearer*,[33] stating that a plaintiff

---

[30] *Johnson, supra* note 25.

[31] *Sheridan, supra* note 28 (Kennedy, J., concurring).

[32] *Johnson, supra* note 25, 270 Neb. at 322, 700 N.W.2d at 625 (quoting *Sheridan, supra* note 28 (Kennedy, J., concurring)).

[33] *United States v. Shearer*, 473 U.S. 52, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985).

"'cannot avoid the reach of [the intentional tort exemption] by framing her complaint in terms of negligent failure to prevent the assault and battery.'"[34]

Two years after deciding *Johnson*, we again considered the scope and application of the intentional tort exemption. In *Doe v. Omaha Pub. Sch. Dist.*,[35] a student sued the school district for personal injury after being sexually assaulted by a classmate on school grounds. The trial court found the claim arose out of an assault and was barred by the PSTCA's intentional tort exemption. On appeal, the student argued the claim did not arise out of assault, but instead arose from the school district's negligent failure to protect her from a foreseeable act of sexual violence by a classmate. We identified the dispositive issue as "determin[ing] the breadth of the phrase '[a]ny claim arising out of assault' as it is used in § 13-910(7)."[36] But in addressing this issue, *Doe* neither referenced nor applied traditional principles of strict construction.

Our opinion in *Doe* acknowledged that if the student had been sexually assaulted by an employee of the school district, her claim would be barred by sovereign immunity under the holding and reasoning in *Johnson.* But because the student had been sexually assaulted by a classmate, rather than a governmental employee, *Doe* implied that different reasoning was appropriate. While *Johnson* had rejected the reasoning of the *Sheridan* majority in favor of the concurrence, *Doe* expressly relied on the majority's reasoning that "the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status."[37] *Doe* described this reasoning as persuasive and held that the student's claim was not barred by sovereign

---

[34] *Johnson, supra* note 25, 270 Neb. at 320, 700 N.W.2d at 624.

[35] *Doe, supra* note 25.

[36] *Id.* at 86, 727 N.W.2d at 455.

[37] See *Sheridan, supra* note 28, 487 U.S. at 401.

immunity because it did "not arise from an assault, but, rather, from an alleged negligent failure to protect a student from a foreseeable act of violence."[38]

We next considered the scope of the intentional tort exemption in 2009, when deciding *McKenna v. Julian*.[39] There, the plaintiff sued the city and a city police officer, seeking to recover damages based on allegations that the officer had assaulted him during an improper arrest. The trial court dismissed the lawsuit, finding, among other things, that the claims were barred by the PSTCA's intentional tort exemption. On appeal, the plaintiff argued his claims did not arise from assault, battery, or false arrest, but instead arose from the officer's negligent use of excessive force. We rejected this argument. Applying strict construction principles and our reasoning in *Johnson*, we found that even when framed as a claim of excessive force, the arrestee's claim was barred as a matter of law by the intentional tort exemption.

In the 2011 case of *Britton v. City of Crawford*,[40] police officers shot and killed a 16-year-old burglary suspect during a standoff. The personal representative for the suspect's estate brought a wrongful death and survival action against the city under the PSTCA, alleging police were negligent in the tactics used when confronting the suspect. The trial court dismissed the action, finding the claims were barred by the assault and battery exemption under § 13-910(7) of the PSTCA. We affirmed, explaining that the intentional tort exemption "''"does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery."'"[41] *Britton* applied principles of strict construction and held the language of the exemption includes

---

[38] *Doe, supra* note 25, 273 Neb. at 86, 727 N.W.2d at 456.

[39] *McKenna, supra* note 12.

[40] *Britton, supra* note 13.

[41] *Id.* at 384-85, 803 N.W.2d at 517 (emphasis in original).

claims that """"sound in negligence but stem from [an assault or] battery,"'"[42] reasoning:

> While other factors may have contributed to the situation which resulted in [the suspect's] death, but for the battery, there would have been no claim. No semantic recasting of events can alter the fact that the shooting was the immediate cause of [the suspect's] death and, consequently, the basis of [the personal representative's] claim. Even if it is possible that negligence [of the officers] was a contributing factor to [the suspect's] death, the alleged negligence was inextricably linked to a battery [and the claim] is thus barred by the PSTCA.[43]

We again considered the scope of the intentional tort exemption in the 2019 case of *Rutledge v. City of Kimball.*[44] There, the plaintiff alleged she had been attacked and choked by a city employee while visiting a city building. She sued the city under the PSTCA, alleging it negligently failed to supervise its employee and failed to protect the public from the employee despite knowledge of his violent propensities. The district court granted the city's motion to dismiss, finding the claim was barred by the PSTCA exemption for claims arising out of assault. On appeal, the plaintiff relied on our opinion in *Doe* to argue that her claim did not arise out of an assault, but instead arose from the city's breach of an independent duty to protect her from foreseeable acts of violence by its employee.[45] We found *Doe* was inapplicable because, among other things, the assailant in *Doe* was not a governmental employee. We instead applied our reasoning from *Johnson* and principles of strict construction to conclude that the plaintiff could not avoid the intentional tort exemption by reframing

---

[42] *Id.* at 385, 803 N.W.2d at 517.

[43] *Id.* at 386, 803 N.W.2d at 518.

[44] *Rutledge, supra* note 3.

[45] See *id.* See, also, *Doe, supra* note 25.

her claim as the negligent failure to prevent a foreseeable assault by a governmental employee.[46] We reasoned:

> While [the plaintiff's] claim is characterized as one of negligence, no claim would exist but for [the employee's] alleged battery. At oral argument, [the plaintiff] conceded that there never would have been a lawsuit had she not been assaulted. Thus, regardless of how the claim is pled, [the plaintiff's] claim is inextricably linked to a battery. Accordingly, the alleged negligence falls within the [assault and battery] exception to the PSTCA and the [c]ity has not waived its sovereign immunity.[47]

The concurring opinion in *Rutledge* agreed that the plaintiff's claim was barred by the intentional tort exemption, but questioned whether *Doe* had been correctly decided, noting that its reasoning was contrary to principles of strict construction and its holding was inconsistent with the rest of our cases construing the plain language of the intentional tort exemption.[48]

Our most recent opportunity to consider the scope of the intentional tort exemption was the 2020 case of *Moser*.[49] In *Moser*, we applied the intentional tort exemption to bar a negligence claim brought by the estate of a man who was fatally assaulted by a cellmate while housed in a state prison facility. The decedent's estate alleged the State had negligently double-bunked the two inmates and had failed to protect the decedent from a foreseeable assault. The district court dismissed the suit, finding the State was immune under the STCA's discretionary function exemption.[50] We affirmed the dismissal, but

---

[46] See *Rutledge, supra* note 3. See, also, *Johnson, supra* note 25.

[47] *Rutledge, supra* note 3, 304 Neb. at 602, 935 N.W.2d at 753.

[48] See *Rutledge, supra* note 3 (Papik, J., concurring). See, also, *Doe, supra* note 25.

[49] *Moser, supra* note 3.

[50] See § 81-8,219(1).

on different sovereign immunity grounds. *Moser* concluded the negligence claim arose out of an assault and fell squarely within the STCA's exemption for "[a]ny claim arising out of assault."[51]

*Moser* reexamined our reasoning in *Doe* and expressly over-ruled it, describing *Doe* as an "outlier"[52] and concluding it was inconsistent with the rest of our cases construing and applying the intentional tort exemption. *Moser* correctly observed that neither *Doe*, nor the majority opinion in *Sheridan* on which it relied, purported to apply principles of strict construction when determining the scope of the intentional tort exemption.[53] Because the reasoning in *Doe* could not be reconciled with the rest of our cases and was contrary to the settled principle that courts must apply a broad reading to statutory exemptions in order to strictly construe waivers of sovereign immunity,[54] *Moser* concluded that *Doe* had been wrongly decided. The reasoning in *Doe* had been premised on the same semantic recasting we had consistently rejected in cases where the assault was committed by a governmental actor,[55] and *Moser* emphasized that when the statutory text is given its plain meaning, there is no principled reason why the scope and meaning of the phrase "arising out of assault" should be construed differently depending on whether the assailant was a governmental or a nongovernmental actor.

---

[51] § 81-8,219(4).

[52] *Moser, supra* note 3, 307 Neb. at 28, 948 N.W.2d at 202. See, also, *Doe, supra* note 25.

[53] See *Moser, supra* note 3. See, also, *Sheridan, supra* note 28.

[54] See, *Moser, supra* note 3; *Brown, supra* note 22; *Jill B. & Travis B., supra* note 22; *Geddes, supra* note 22; *Hoiengs, supra* note 22; *Wiseman, supra* note 22; *Gentry, supra* note 22; *Rumbel, supra* note 22; *Frye, supra* note 22; *Anstine, supra* note 22.

[55] See, e.g. *Moser, supra* note 3; *Rutledge, supra* note 3; *Britton, supra* note 13.

We pause here to note that in *Moser*, and again in this case, our dissenting colleague suggests that the exemption in § 13-910(7) for "[a]ny claim arising out of assault" should be construed to apply only to claims that arise out of assaults "committed by governmental employees." But the qualifying language urged by the dissent appears nowhere in § 13-910(7). And given that other PSTCA exemptions expressly reference claims based on the acts "of an employee"[56] or "by an employee,"[57] the omission of such qualifying language from § 13-910(7) cannot be ignored. Nor do we find persuasive the dissent's suggestion that the PSTCA's definitions of a "[t]ort claim"[58] or "[e]mployee"[59] make it necessary to read into the plain language of § 13-910(7) the qualifying phrase "committed by governmental employees." It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[60] The language used by the Legislature in § 13-910(7) is strikingly broad; without qualification or limitation, it exempts from the waiver of sovereign immunity "[a]ny claim arising out of

---

[56] § 13-910(1) (referring to "[a]ny claim based upon an act or omission of an employee of a political subdivision"). See, also, § 13-901(2) (referring to "[a]ny claim based upon the exercise or performance of . . . a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision").

[57] § 13-910(4) ("[n]othing in this subdivision shall be construed to limit a political subdivision's liability for any claim based upon the negligent execution by an employee of the political subdivision in the issuance of a certificate of title"). See, also, § 13-910(8) (referring to "[a]ny claim by an employee of the political subdivision which is covered by the Nebraska Workers' Compensation Act"); § 13-910(10) ("[n]othing in this subdivision shall be construed to limit a political subdivision's liability for any claim arising out of the operation of a motor vehicle by an employee of the political subdivision").

[58] See § 13-903(4).

[59] See § 13-903(3).

[60] *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

assault." We respectfully disagree with the dissent's sugges-
tion that this language can reasonably be construed to exempt
only claims arising out of assaults committed by governmental
employees. And even if we could find plausible textual support
for the alternative construction urged by the dissent, it would
not satisfy our long-established rule that a waiver of sovereign
immunity is to be found only where stated by the most express
language of a statute or by such overwhelming implication
from the text as will allow no other reasonable construction.[61]
There is no basis in the plain text of § 13-910(7), or in our
binding precedent construing that statute, for the alternate
interpretation urged by the dissent.

[12] Instead, with the exception of *Doe,* our cases have
construed the intentional tort exemption to give it the full
breadth demanded by its plain text and our canons of con-
struction. We have said the exemption applies whenever an
assault "is essential to the claim,"[62] and it bars claims against
the government which "sound in negligence but stem from
[an assault or] battery."[63] We have also said the exemption
encompasses claims that "would not exist without an assault
or battery,"[64] and claims which are "'inextricably linked to [an
assault or] battery.'"[65] All of these articulations speak to the
same point: when a tort claim against the government seeks to
recover damages for personal injury or death stemming from
an assault, the claim necessarily "arises out of assault" and

---

[61] See, e.g., *Moser, supra* note 3; *Jill B. & Travis B., supra* note 22; *Lamb v. Fraternal Order of Police Lodge No. 36*, 293 Neb. 138, 876 N.W.2d 388 (2016); *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013); *Britton, supra* note 13; *King v. State*, 260 Neb. 14, 614 N.W.2d 341 (2000); *Logan v. Department of Corr. Servs.*, 254 Neb. 646, 578 N.W.2d 44 (1998); *Wiseman, supra* note 22.

[62] *Moser, supra* note 3, 307 Neb. at 29, 948 N.W.2d at 202.

[63] *Britton, supra* note 13, 282 Neb. at 385, 803 N.W.2d at 517.

[64] *Moser, supra* note 3, 307 Neb. at 29, 948 N.W.2d at 202.

[65] *Id.* at 27, 948 N.W.2d at 201 (quoting *Britton, supra* note 13).

is barred by the intentional tort exemption under the PSTCA. The plain language of the exemption and our principles of strict construction require this result no matter how the tort claim has been framed[66] and regardless of the assailant's employment status.[67]

### EDWARDS' CLAIM ARISES OUT OF ASSAULT

On appeal, Douglas County contends that no matter how Edwards frames her negligence claim against the county, it "aris[es] out of assault"[68] and thus falls squarely within the PSTCA's intentional tort exemption. Edwards concedes that her damages stem from the assault by Clark, but she argues that her claim does not arise out of the assault, and instead is based on "a completely independent incident . . . the delay of law enforcement arriving to the scene of the emergency caused by Douglas County's failure to exercise reasonable care in handling [John's 911 calls]."[69]

For the same reasons we concluded the negligence claims in *Johnson*, *McKenna*, *Britton*, *Rutledge*, and *Moser* arose out of assault and were barred by sovereign immunity, we must likewise conclude that Edwards' negligence claim against Douglas County arises out of an assault and is barred by § 13-910(7). Edwards alleges that the county negligently mishandled the 911 calls with John and that, as a result, emergency personnel did not arrive in a timely manner and Edwards "continue[d] to be held hostage [and was] sexually assaulted at gunpoint"

---

[66] See *Moser, supra* note 3; *Rutledge, supra* note 3; *Britton, supra* note 13.

[67] See *Moser, supra* note 3. Accord *Sheridan, supra* note 28, 487 U.S. at 411 (O'Connor, J. dissenting; Rehnquist, C.J., and Scalia, J., join) (observing that plain language of FTCA intentional tort exception applies "whether the person committing the intentional tort is a Government employee, a nonemployee, or a Government employee acting outside the scope of his office").

[68] See § 13-910(7).

[69] Memorandum brief for appellant in opposition to appellee's motion for summary dismissal or affirmance at 3.

by Clark. At oral argument before this court, Edwards' counsel conceded that all of Edwards' claimed damages stemmed from the assault by Clark. This presents a classic example of a claim which sounds in negligence but which stems from, and is inextricably linked to, an assault or battery. Edwards is alleging that, because of the government's negligent handling of the 911 calls, she was injured by an intentional assault. And while it is conceivable there could be circumstances where the claim is so attenuated from an assault that it cannot fairly be characterized as arising out of the assault, we do not have such a claim before us today.

[13] We understand Edwards' briefing to suggest that her negligence claim is factually different from those considered in *Johnson*, *McKenna*, *Britton*, *Rutledge*, and *Moser*, because those plaintiffs alleged the government was negligent in failing to protect against a foreseeable assault, and Edwards is alleging the government's negligence delayed its response to an assault in progress. This argument relies on the sort of semantic recasting of events this court has consistently rejected.[70] Plaintiffs cannot circumvent the assault and battery exemption through "artful pleading."[71] Because the Legislature has broadly exempted from the PSTCA "[a]ny claim arising out of assault,"[72] it is immaterial whether Edwards has alleged the assault occurred because the government negligently failed to prevent it or because the government negligently delayed in responding to it. No matter how it is framed, Edwards' claim of governmental negligence arises out of assault and is barred by sovereign immunity under § 13-910(7) of the PSTCA.

Nothing in this opinion should be understood to diminish the seriousness of the assault experienced by Edwards or to excuse any mishandling of the 911 calls for help. But the Legislature has expressly preserved the government's sovereign immunity for negligence claims that arise out of

---

[70] See, *Moser, supra* note 3; *Britton, supra* note 13.

[71] *Jill B. & Travis B., supra* note 22, 297 Neb. at 93, 899 N.W.2d at 265.

[72] § 13-910(7).

assaults, and Edwards has brought such a claim. The provisions of § 13-910(7) are plain and unambiguous, and this court must apply those provisions as written.[73] The sweeping language of the exemption simply allows no other reasonable construction.[74]

[14] The dissent asks important public policy questions about the impact of immunizing the government from a claim that it failed to respond quickly enough to stop a violent assault against an innocent victim. Important public policy questions are also presented by calls to waive immunity and expand the types of claims that can result in money judgments against a political subdivision and impact the public fisc. But balancing these public policy concerns is not a matter the Nebraska Constitution leaves to the courts.[75] No matter how compelling the facts of a particular case may be, the judiciary does not have the power to waive sovereign immunity.[76]

[15,16] Neb. Const. art. II, § 1, precludes us from exercising powers belonging to the Legislature, and decisions on whether and how to limit the government's potential tort liability belong to the Legislature.[77] Courts must not, through judicial construction, usurp the Legislature's role in drawing the line between governmental liability and immunity.[78] Prior courts have strayed from this foundational principle.[79] This court will not.

---

[73] See *Glasson v. Board of Equal. of City of Omaha*, 302 Neb. 869, 925 N.W.2d 672 (2019).

[74] See, *Moser, supra* note 3; *Jill B. & Travis B., supra* note 22.

[75] See Neb. Const. art. V, § 22.

[76] See *id.* See, also, *McKenna, supra* note 12.

[77] See Neb. Const. art. V, § 22.

[78] See *Jill B. & Travis B., supra* note 22.

[79] See *Brown v. City of Omaha*, 183 Neb. 430, 434, 160 N.W.2d 805, 808 (1968) (plurality holds that while Legislature might have "the ultimate word," courts also have power to abrogate sovereign immunity from tort liability arising out of ownership, use, and operation of motor vehicles). See, also, *Doe, supra* note 25.

We therefore leave to the Legislature, after careful study and full debate of the social and economic consequences, the public policy decision of whether to expand the government's tort liability for claims arising out of assault. For the sake of completeness, we note that because Edwards' claim against the county is plainly barred by the intentional tort exemption, we express no opinion on whether it is otherwise the type of claim for which a private person would be liable in tort under Nebraska law.[80]

## No Waiver of Sovereign Immunity Under § 86-441

In opposing the county's motion for summary affirmance on grounds of sovereign immunity, Edwards argues that even if her claim is barred by the PSTCA's intentional tort exemption, we should consider whether the ETCSA operates as a waiver of sovereign immunity "separate and apart from that provided for in [the PSTCA]."[81] Edwards refers this court to § 86-441 of the ETCSA, which provides:

> In contracting for such 911 service and in providing such 911 service, except for failure to use reasonable care or for intentional acts, each governing body, public safety agency, and service supplier and their employees and agents shall be immune from liability or the payment for any damages in the performance of installing, maintaining, or providing 911 service.

---

[80] See § 13-903(4) ("[t]ort claim shall mean any claim against a political subdivision for money only on account of . . . personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision . . . under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage"); § 13-908 ("in all suits brought under [the PSTCA] the political subdivision shall be liable in the same manner and to the same extent as a private individual under like circumstances").

[81] Memorandum brief for appellant in opposition to appellee's motion for summary dismissal or affirmance at 4.

Before the district court, Edwards argued this statutory provision established Douglas County's legal duty. But on appeal, we understand Edwards to contend that § 86-441 should be construed as a waiver of sovereign immunity for claims alleging negligence against any provider of 911 services. We disagree.

The Legislature has declared:

> [N]o political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA].[82]

[17] As such, the PSTCA provides "'the exclusive means'"[83] by which to maintain a tort claim against a political subdivision and its employees. The PSTCA does expressly reference and incorporate some statutes outside the PSTCA,[84] but the PSTCA makes no reference to § 86-441 or to any other statute contained in the ETCSA. Similarly, the ETCSA makes no reference whatsoever to the PSTCA.[85]

[18] Moreover, we see nothing in the express language of § 86-441 which indicates the Legislature intended to waive sovereign immunity for claims against political subdivisions. The

---

[82] § 13-902.

[83] *Connelly v. City of Omaha*, 284 Neb. 131, 151, 816 N.W.2d 742, 760 (2012). Accord *Geddes, supra* note 22.

[84] See, e.g., §§ 13-903 to 13-907; § 13-909; § 13-910; §§ 13-912 to 13-915; § 13-917; § 13-918; §§ 13-923 to 13-925; § 13-928.

[85] Compare, e.g., Neb. Rev. Stat. § 13-2520 (Reissue 2012) (joint public agency may be sued subject to PSTCA); Neb. Rev. Stat. § 47-1005 (Supp. 2019) (tort claims for violation of Healthy Pregnancies for Incarcerated Women Act governed by PSTCA); Neb. Rev. Stat. § 71-15,168(1) (Reissue 2018) (tort claims against housing agency governed by PSTCA); Neb. Rev. Stat. § 76-2328 (Reissue 2018) (claims under One-Call Notification System Act subject to PSTCA).

plain text of the statute provides "immun[ity] from liability"[86] to governing bodies, public safety agencies, and service suppliers and their employees and agents, "except for failure to use reasonable care or for intentional acts."[87] This language appears to except both negligent and intentional acts, and it is thus unclear what sort of immunity the Legislature intended to confer. But we express no opinion in that regard, because whatever the proper interpretation may be of the language in § 86-441, it is not a waiver of sovereign immunity.

As stated, statutes purporting to waive the protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.[88] A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[89] If there is any doubt as to whether immunity has been waived, the sovereign must prevail.[90] Applying these settled principles, we do not construe § 86-441 as an express waiver of sovereign immunity.

## CONCLUSION

The Legislature has broadly exempted from the PSTCA "[a]ny claim arising out of assault,"[91] and Edwards' negligence claim against Douglas County falls squarely within this exemption. When an exemption under the PSTCA applies, the political subdivision is immune from suit, and the proper remedy is to dismiss the action for lack of subject matter jurisdiction.[92]

---

[86] § 86-441.

[87] *Id.*

[88] *Moser, supra* note 3.

[89] *Id.*

[90] See *Jill B. & Travis B., supra* note 22.

[91] § 13-910(7).

[92] *Lambert, supra* note 8.

Although the district court entered a judgment of dismissal on different grounds, we affirm that dismissal on grounds of sovereign immunity.[93] The county's motion for summary affirmance or dismissal is overruled as moot.

Affirmed.

_____

[93] See *Davis, supra* note 10 (providing that appellate court may affirm lower court's ruling that reaches correct result, albeit on different reasoning).

Miller-Lerman, J., dissenting.

For all the reasons explained in my dissent in *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020), I again respectfully disagree with the majority's conclusion that, based on sovereign immunity, the governmental entity cannot be sued for its alleged antecedent negligence if there is an assault by anyone anywhere in the picture.

In this case, Julie Edwards' brother John Edwards called the 911 emergency dispatch service at 10:12:17 a.m., after being shot by Kenneth Clark. As John lay dying in the basement, he informed the 911 operator that he had been shot in the stomach. Thereafter, in a series of seven calls, the 911 operator variously asked John to move around and to provide an exact address for the house, and when John repeated that he had been shot, the 911 operator said in a call at 10:33:58, "[y]eah, I heard that." At this point John dialed 911 a long time ago. As 911 dawdled, Clark took Edwards upstairs and sexually assaulted her at gunpoint. Eventually, law enforcement were dispatched at 10:54:06 a.m. and arrived at approximately 10:58:41 a.m.

In her complaint, Edwards alleged that Douglas County (County) had been negligent by virtue of the actions of its 911 operator, who failed to use reasonable care in handling the emergency calls such that the emergency personnel did not arrive at the house in a timely manner. Edwards specifically alleged that "[w]hile waiting for emergency personnel to arrive, [she] was sexually assaulted at gunpoint." Edward's

claim was that the 911 operator was dilatory; she did not claim that the 911 operator assaulted her.

In *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007), this court followed the reasoning of the U.S. Supreme Court's holding in *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), but in *Moser, supra*, and again today, the majority refuses to follow U.S. Supreme Court precedent. *Moser* overruled *Doe* based on the dubious notion that the U.S. Supreme Court and the Nebraska Supreme Court interpret the same statutory language so differently that adhering to U.S. Supreme Court precedent would offend Nebraska. As I explained in my *Moser* dissent, there is no meaningful difference between statutory interpretation habits of the Nebraska Supreme Court and the U.S. Supreme Court in this regard and reading the text of Neb. Rev. Stat. § 13-910(7) (Reissue 2012) in the context of the Political Subdivisions Tort Claims Act (PSTCA) provisions of which it is a part, including the definition of "claim" in Neb. Rev. Stat. § 13-903(4) (Reissue 2012), I conclude that the intentional tort assault exception to the waiver of sovereign immunity does not apply; hence, the County is subject to suit in this case.

*New Theory by the Government*
*on Appeal—Again.*

As an aside, I mention that this is one of a number of recent cases in which the governmental party introduced a new theory for the first time on appeal—in this instance, in a motion for summary dismissal or affirmance on the eve of oral argument. See *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020) (Miller-Lerman, J., dissenting) (noting that theory raised for first time in appellate brief); *Candyland, LLC v. Nebraska Liquor Control Comm.*, 306 Neb. 169, 944 N.W.2d 740 (2020) (Miller-Lerman, J., concurring) (noting that theory raised for first time at oral argument); *State v. Vann*, 306 Neb. 91, 944 N.W.2d 503 (2020) (Miller-Lerman, J., concurring) (noting that theory raised for first time at oral argument resulting in

opportunistic and novel use of "plain error" review to overrule precedent). Unlike the County's approach in the trial court, where the County asserted that it owed no duty to Edwards, about which I make no comment, the County jumped on the *Moser* bandwagon for the first time late in the appeal and now contends that the complaint should be dismissed based on the intentional tort assault exception to the waiver of sovereign immunity. Although Edwards may have a burden in being able to prove negligence by the County, in my view, the case should not be dismissed based on sovereign immunity, and further, the record showed sufficient facts to survive a motion for summary judgment.

*The Nebraska Statute and the*
*Federal Statute Should Be*
*Read the Same Way.*

As in *Moser, supra*, a case involving inmate assault, the majority reasons that the government's earlier negligence arose out of the subsequent assault by a nongovernmental assailant. The majority believes that Nebraska abides by a unique statutory interpretation scheme, so it cannot follow the interpretation of the same language as found in *Sheridan, supra*. But, as I explained in my dissent in *Moser*, the interpretation scheme is the same, i.e., read the waiver of immunity strictly and the exceptions thereto broadly, and therefore, one should expect the same result. The majority, however, has chosen to ignore the wisdom of the U.S. Supreme Court precedent and insists that Nebraska should read the same language differently and that this reading is what the Nebraska Legislature intended. I respectfully disagree.

As I explained in my *Moser* dissent and continue to believe, the majority has got it wrong. In that dissent, I stated:

The U.S. Supreme Court has addressed the waiver of sovereign immunity and the "arising out of assault" exception language. Just like Nebraska, the U.S. Supreme Court has stated that a sovereign immunity waiver "will

be strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996). And just like Nebraska, one justice has summarized the applicable U.S. Supreme Court law as follows: "In cases where, as here, the question whether a particular claim is subject to an exception is disputed, we have construed the FTCA [Federal Tort Claims Act] exceptions broadly to preclude claims for actions Congress intended to except from the FTCA's general waiver of immunity." *Dolan v. Postal Service*, 546 U.S. 481, 499 n.3, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006) . . . .

The U.S. Supreme Court has warned, however, that "'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute,' . . . which 'waives the Government's immunity from suit . . . .'" *Id.*, 546 U.S. at 492 (Thomas, J., dissenting). And we too have resisted the temptation to accord unduly generous interpretations of exceptions which would defeat the waiver. See, e.g., *Brown*, 305 Neb. at 122, 939 N.W.2d at 361 (declining to read language of exception "so broadly" that it "would judicially expand" exception). Applying U.S. Supreme Court precedent and according a broad reading to the exception provisions of the FTCA to a fact pattern akin to the instant case, the U.S. Court of Appeals for the Second Circuit stated: "Despite the broad reading given to [the FTCA] section 2680(h)'s 'arising out of' language [equivalent to Nebraska's §§ 81-8,219(4) and 13-910(7)], [the section] may not bar mixed claims of negligence and intentional conduct in the relatively uncommon case" where the negligence claim is independent of the intentional tort. *Guccione v. U.S.*, 847 F.2d 1031, 1037 (2d Cir. 1988). So even applying a broad reading to the intentional tort exception, cases like the instant matter are not barred where there is independent negligence by the government.

Given the above, the Nebraska Supreme Court and the U.S. Supreme Court clearly share the same approach to the statutory language at issue. Nevertheless, without making an apt comparison, the majority insists the Nebraska approach to statutory interpretation is so different that reading the same language requires a result in Nebraska different from that of the U.S. Supreme Court's controlling authority.

*Moser v. State*, 307 Neb. 18, 35-36, 948 N.W.2d 194, 206 (2020) (Miller-Lerman, J., dissenting).

In my view, the majority's act of broadening the assault exception through unnecessary interpretation is a judicial expansion beyond the statute's text and is a usurpation of the legislative power.

*The Intentional Tort Assault Exception Applies to*
*Claims Alleging Intentional Torts Committed*
*by Governmental Employees But Not*
*to Intentional Torts Committed by*
*Nongovernmental Assailants.*

The majority states that there is no basis for applying the exception "differently depending on whether the assailant was a governmental or a nongovernmental actor." To the contrary, the difference is in the very text of the PSTCA statute, which the majority avoids quoting in its intentional tort exception analysis. The statutory language shows that the language of the intentional tort exception (sometimes referred to as "exemption") applies to intentional torts committed by governmental employees but not to intentional torts committed by nongovernmental actors.

The majority relies on the § 13-910(7) exception, but fails to explain—"exception to what?" The answer is that the exception is applicable only to a "claim" that a governmental employee—not a nongovernmental person—committed the very tort sought to be excepted. That is, the tort allegedly committed by the governmental employee must be the same tort

for which the exception is applicable. So, if the governmental employee commits an assault, the governmental entity can receive immunity based on the assault exception to the waiver of sovereign immunity. But if the governmental employee commits a nonassault act of negligence, the governmental entity cannot receive immunity based on the assault exception where the assault was committed by a random individual who is not a governmental employee.

The PSTCA's general waiver of immunity applies only to "tort claims" of its employees. Neb. Rev. Stat. § 13-902 (Reissue 2012). The type of claims covered by the PSTCA waiver of immunity are defined in Neb. Rev. Stat. § 13-903(4) (Reissue 2012), where "claim" is defined as:

*Tort claim shall mean any claim* against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, *caused by the negligent or wrongful act or omission of any employee of the political subdivision*, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death but shall not include any claim accruing before January 1, 1970.

Thus, under § 13-903(4), a "claim" is an "act or omission" of an "employee" of the political subdivision. An "employee" under § 13-903(3) is defined as "[e]mployee of a political subdivision shall mean any one or more officers or employees of the political subdivision . . . ."

The exception on which the majority relies in its resort to statutory interpretation is found in § 13-910, which provides:

The [PSTCA] shall not apply to:

. . . .

(7) Any claim [defined as a negligent or wrongful act or omission by a governmental employee in § 13-903(4),] arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel,

slander, misrepresentation, deceit, or interference with contract rights.

Construing the same language, the U.S. Supreme Court has explained:

> The exception should therefore be construed to apply only to claims that would otherwise be authorized by the basic waiver of sovereign immunity. Since an assault by a person who was not employed by the Government could not provide the basis for a claim under the FTCA [or the [PSTCA], the [intentional tort] exception could not apply to such an assault; rather, *the exception only applies in cases arising out of assaults by federal* [*or governmental subdivision*] *employees.*

*Sheridan v. United States*, 487 U.S. 392, 400, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988) (emphasis supplied).

The definitional statute, § 13-903(4), which is omitted from the majority's analysis, states "claim" "shall mean . . . negligent or wrongful *act or omission of any employee of the political subdivision*." (Emphasis supplied.) Under the PSTCA, sovereign immunity is waived for certain acts, and such acts give rise to "claims" which form the basis of viable lawsuits unless such claims are excepted. "Claim" is a statutory word of art. So the exception for "[a]ny *claim* arising out of assault" in § 13-910(7) by definition plainly means that a "negligent or wrongful act or omission of an employee of the political subdivision" of the kind described will be excepted. See § 13-903(4) (emphasis supplied).

These statutory words defining "claim" are plain, direct, and unambiguous. We have repeatedly said:

> When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context. *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are

plain, direct, and unambiguous. *Id*. It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute. *Id*.

*Parks v. Hy-Vee*, 307 Neb. 927, 944-45, 951 N.W.2d 504, 518 (2020). Instead of accepting that the text of these statutes is plain, the majority opinion takes a lengthy excursion in statutory interpretation, and in so doing, it ignores the controlling statutory text defining "claim" and this context to which exceptions are applied.

So in the instant case, we ask: What is the alleged wrongful act of the governmental employee which forms the basis for the "claim"? Edwards' "claim" against the County is based on its alleged negligent handling of the 911 calls. The claim is based on what the County's employees did in the course of their employment, and no one is claiming in this case that a County employee assaulted Edwards. The claim does not arise out of the assault; the assault is an independent intentional tort. Nevertheless, the majority persists in misconstruing the statute. As in *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020), the plaintiff alleges that negligence was committed by a governmental entity and that the assault is the subsequent injury or event. In my view, the majority gets it backward; it reasons that the later "assault," which is a listed act in § 13-910(7), led to the earlier negligence claim.

What if Clark stole money out of Edwards' purse during the period of the delay? Stealing is not listed as an excepted act in § 13-910(7). Would the majority reason that the claim of negligently delayed 911 handling arose from the subsequent theft and, because theft is not on the list of § 13-910(7), that the County is not immune and remains subject to suit? That is, in the majority view, the Legislature, in enacting § 13-910(7), believed that whether a political subdivision can be sued for its earlier negligence depends on the fortuitous nature of the crime committed later by the nongovernmental

employee. The majority's reasoning is neither warranted by statutory text nor sensible.

Referring to the language and purpose of the statute, I ask: Should a government's liability for its earlier negligent act depend on the type of crime a third party later commits? Does that make the government's act nontortious? What is the incentive for good 911 hygiene if 911 negligence can be obliterated by the later criminal act of a third party? Is the reading of the statute by the majority what the Legislature intended?

We recently stated that "[i]t is a court's duty to discover, if possible, the legislative intent from the statute itself." *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 458, 949 N.W.2d 496, 502 (2020). And we have long held that it is presumed that the Legislature intended a sensible, rather than an absurd, result. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998). We have specifically applied the preference for a sensible reading to the PSTCA. E.g., *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015). With the foregoing in mind, I respectfully believe that the interpretation of the majority of the intentional tort exception in the PSTCA is neither supported by the text of the statute, sensible, nor intended by the Legislature. Instead, it is an unwarranted judicial expansion of a statutory exception.

*The Court Invites the
Legislature to Act.*

The majority reading strays from the text of the statute, strays from the principles of statutory construction in general and in the sovereign immunity jurisprudence in particular, strays from the reading of the same language by the U.S. Supreme Court, strays from a sensible reading of § 13-910, and strays from the fact the Legislature has long acquiesced in this court's reading of the assault exception in *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb 79, 727 N.W.2d 447 (2007), and in my view, the majority inappropriately comments on fiscal considerations in its legal analysis. After having judicially

expanded the statutory intentional tort exception, the majority finds itself in the awkward position of entreating the Legislature to consider restoration of the intentional tort assault exception to the status quo ante *Moser*. I welcome restoration by the Legislature.

The majority view developed in *Moser* has broad consequences. This case involves a woman seeking to avoid violence. What if 911 dawdled while your daughter was being sexually assaulted at gunpoint?