GARY S. WOLFE, APPELLANT, V. BECTON DICKINSON
AND COMPANY, APPELLEE.

662 N.W.2d 599

Filed June 6, 2003. No. S-01-933.

Thom K. Cope, of Polsky, Cope, Shiffermiller, Coe & Monzon, for appellant.

Timothy M. Welsh and Donna S. Colley, of Berens & Tate, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Gary S. Wolfe filed a complaint with the Nebraska Equal Opportunity Commission (NEOC) claiming that his employer, Becton Dickinson and Company (BD), discriminated against him because of Wolfe's knowledge of and opposition to illegal drug use by other employees. Wolfe subsequently filed a lawsuit in the Phelps County District Court alleging that BD unlawfully fired him in retaliation for his NEOC complaint. The district court granted summary judgment in favor of BD, and Wolfe appeals.

The first question presented by this case is whether the protection afforded by the Nebraska Fair Employment Practice Act (FEPA) applies to an employee's opposition to unlawful activities, not of the employer, but of other employees. The second question presented concerns what minimum showing is necessary regarding the discrimination claim underlying a retaliatory discharge claim.

We determine that FEPA does not protect an employee who is in opposition to his or her fellow employees' unlawful activities

and that a reasonable, good faith belief in the underlying discrimination claim is necessary for a retaliatory discharge claim. Because Wolfe failed to meet these standards, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

BD hired Wolfe on February 4, 1980. He worked without official incident until January 1997, although, by his own admission, Wolfe complained of problems with his coworkers going back several years.

Wolfe joined the BD substance abuse team on January 24, 1997. He testified that he was subsequently subjected to ridicule by his coworkers by being called a "narc" and a "DEA." Wolfe testified that he informed his supervisor and BD's human resources director of his belief that his coworkers were using illegal drugs. Liberally construed, Wolfe's testimony indicated that he told them the illegal drug use occurred both off and on the worksite, although this evidence is contradicted. The only support Wolfe gives for these allegations is hearsay and conjecture—there was no direct knowledge or witnessing of illegal drug usage. One of Wolfe's reports occurred in August 1997, while the date of the other report is not clear from the record.

Sometime after these reports, on March 6, 1998, BD issued Wolfe a corrective action and subsequently transferred him to a different department. BD put him on probation and relieved him of his duties on a safety committee. He was also told to attend the counseling sessions made available to him. Wolfe claims in his NEOC complaint that his overtime privileges were revoked. Later, BD conducted a survey of Wolfe's coworkers concerning Wolfe's allegedly inappropriate behavior occurring after the March 6 corrective action. According to BD, all these measures were motivated by Wolfe's disruption of the workforce.

On April 9, 1998, Wolfe filed an NEOC "whistleblower" complaint, alleging that the transfer, the corrective action, the privileges revocation, the investigation, and the coworker harassment were in retaliation for his opposition to illegal drug use by his coworkers. BD was made aware of Wolfe's complaint on April 13.

On May 13, 1998, after BD had conducted a preliminary investigation, Wolfe was suspended for continuing to disrupt the workplace after his March 6 corrective action. The suspension was to facilitate a full investigation. Six days later, Wolfe was fired, because, according to BD, the full investigation supported the coworkers' complaints that Wolfe did indeed continue to engage in behavior specifically mentioned as inappropriate in the March 6 corrective action.

Wolfe then filed a petition with the district court, alleging two causes of action, the "whistleblower" claim and a retaliatory discharge claim. After Wolfe brought this action, BD filed a motion for summary judgment. After a hearing, the district court granted summary judgment. Wolfe timely appealed.

## ASSIGNMENTS OF ERROR

Wolfe assigns that the district court erred in granting summary judgment. Specifically, Wolfe assigns, restated, that the court erred in finding (1) that no genuine issue of material fact existed regarding whether Wolfe engaged in protected activity regarding his first claim, (2) that no genuine issue of material fact existed regarding whether Wolfe met the good faith requirement of his second claim, and (3) that BD had a legitimate business reason for Wolfe's dismissal.

## STANDARD OF REVIEW

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Agri Affiliates, Inc. v. Bones*, 265 Neb. 798, 660 N.W.2d 168 (2003).

■ The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002).

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the lower court. *Fox v. Nick*, 265 Neb. 986, 660 N.W.2d 881 (2003). Statutory interpretation presents a question of law. *Id.*

## ANALYSIS
### WHISTLEBLOWER CLAIM

FEPA makes it unlawful for an employer to discriminate against its employee on the basis of the employee's opposition to an unlawful practice. Neb. Rev. Stat. § 48-1114 (Reissue 1998).

The district court assumed that the "practice" in this statute referred to any unlawful practice *of the employer*. The parties do not dispute that the alleged unlawful acts which Wolfe opposed—illegal drug use—were those of his fellow employees and not of his employer, BD. Whether FEPA protects this type of opposition is a question of first impression in Nebraska.

The text of § 48-1114, under which Wolfe brings his first claim, states in its entirety:

> It shall be an unlawful employment practice for an employer to discriminate against any of his or her employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he or she (1) has opposed any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act, (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the act, or (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state.

In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Wilder v. Grant Cty. Sch. Dist. No. 0001*, 265 Neb. 742, 658 N.W.2d 923 (2003). Seen in context of the entire act and in light of the apparent purposes the act is meant to serve, the "practice" in § 48-1114(3) refers to an unlawful practice of the employer. The statute's purpose is not served by giving an extra layer of protection from discharge to those employees who happen to voice their opposition to any manner of unlawful activity. While it may be unfair in many instances to disadvantage an employee for his or her vocal opposition to unlawful activities unrelated to the

employment, FEPA " ' "is not a general 'bad acts' statute." ' " See *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 135 (2d Cir. 1999) (speaking of analogous title VII employment discrimination act). See, also, *Little v. United Technologies*, 103 F.3d 956 (11th Cir. 1997) (title VII); *Crowley v. Prince George's County, Md.*, 890 F.2d 683 (4th Cir. 1989) (title VII); *Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir. 1978) (title VII). There are many other abuses not proscribed by FEPA-type acts, including discharge for opposition to racial discrimination by other employees against the public, see *Wimmer, supra*, and discharge for opposition to discrimination based on an employee's sexual orientation, see *Hamner v. St. Vincent Hosp. and Health Care Center*, 224 F.3d 701 (7th Cir. 2000) (title VII).

The evil addressed by § 48-1114(3) is the exploitation of the employer's power over the employee when used to coerce the employee to endorse, through participation or acquiescence, the unlawful acts of the employer. The legislative history bears out this interpretation. The 1985 amendment adding subsection (3) to § 48-1114 was intended "to provide some protection for employees in the private sector who are asked by their employer or labor union to do something that is illegal." Statement of Purpose, L.B. 324, Committee on Business and Labor, 89th Leg., 1st Sess. (Feb. 13, 1985). Both the text of the rule and reasonable policy dictate that an employee's opposition to *any* unlawful act of the employer—whether or not the employer pressures the employee to actively join in the illegal activity—is protected under § 48-1114(3).

Therefore, since a § 48-1114(3) violation must include either the employee's opposition to an unlawful practice of the employer or the employee's refusal to honor an employer's demand that the employee do an unlawful act, Wolfe has failed to present a prima facie case for his first cause of action. The only unlawful act he alleges is illegal drug use by BD's employees. BD is not alleged to have been involved in the drug use or even to have endorsed its use. Liberally construed, Wolfe's allegations might include the breach of some duty of BD to act on credible information of drug abuse on its worksite. However, Wolfe's reports were not credible, being completely unsubstantiated by anything but hearsay and conjecture. No duty arises from such

completely unsubstantiated information. Furthermore, the record lacks any allegation that Wolfe voiced any opposition to this supposed inaction. His opposition was consistently framed as being directed toward the alleged illegal drug use alone. Therefore, Wolfe's first assignment of error is without merit. There is no genuine issue of material fact regarding whether Wolfe engaged in a protected activity. The court did not err in granting summary judgment regarding Wolfe's first cause of action.

### RETALIATORY CLAIM

A prima facie case of retaliatory discharge of an employee consists of a discharge following a protected activity of which the employer was aware. *Harris v. Misty Lounge, Inc.*, 220 Neb. 678, 371 N.W.2d 688 (1985). The record shows that Wolfe was terminated after he filed an NEOC complaint, a complaint of which BD was admittedly aware. The question, then, is whether Wolfe's filing of this NEOC complaint was a protected activity. If it was not, as a matter of law, the summary judgment was not erroneous.

If Wolfe's NEOC complaint was based upon actual, unlawful discrimination, the filing of that complaint would have been a protected activity. However, it was not so based. This court has not previously explained exactly what must be true of the discriminatory act underlying the retaliation claim. Other jurisdictions are not unanimous; some require actual proof of discrimination while others find even defamatory and malicious filings sufficient. But the vast majority of jurisdictions require a reasonable, good faith belief that the employer unlawfully discriminated.

The U.S. Supreme Court has concluded that an unreasonable belief of unlawful acts cannot form the basis for title VII protection of a complaining employee against retaliation, but left unanswered whether a reasonable belief would suffice. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). The Court cited without explicitly endorsing the Ninth Circuit's doctrine that title VII can "protect employee 'oppos[ition]' not just to practices that are actually 'made . . . unlawful' by Title VII, but also to practices that the employee could reasonably believe were unlawful." 532 U.S. at 270. The Court stated that it had "no occasion to rule on the propriety of

this interpretation, because even assuming it is correct, no one could reasonably believe that the incident recounted above violated Title VII." *Id.* The Court, then, at least adopted the interpretation that unreasonable beliefs cannot form the basis of the discrimination complaint underlying a retaliatory claim. What it left undecided was whether a reasonable, though incorrect, belief in unlawful discrimination could form the basis.

All federal circuit courts have concluded that a belief must be reasonable—but need not necessarily be correct—to form the underlying basis for a retaliation claim. See, e.g., *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642 (5th Cir. 2002); *Childress v. City of Richmond, Va.*, 120 F.3d 476 (4th Cir. 1997); *Wyatt v. City of Boston*, 35 F.3d 13 (1st Cir. 1994); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3d Cir. 1990). Most circuit courts require that the belief be in good faith as well. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307 (11th Cir. 2002); *Little v. Windermere Relocation, Inc.*, 265 F.3d 903 (9th Cir. 2001); *Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189 (8th Cir. 2001); *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001); *Hamner v. St. Vincent Hosp. and Health Care Center*, 224 F.3d 701 (7th Cir. 2000); *Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir. 2000); *Parker v. Baltimore & O. R. Co.*, 652 F.2d 1012 (D.C. Cir. 1981). See, also, *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249 (10th Cir. 2001) (applying principle to Americans with Disabilities Act).

Many state courts similarly interpret their fair employment practice acts to require a good faith, reasonable basis for the underlying discrimination claim. *Viktron/Lika v. Labor Com'n*, 38 P.3d 993 (Utah App. 2001); *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217 (Tex. App. 1998); *Sada v. Robert F. Kennedy Medical Center*, 56 Cal. App. 4th 138, 65 Cal. Rptr. 2d 112 (1997); *Conrad v. Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996); *McCabe v. Board of Johnson County Comm'rs*, 5 Kan. App. 2d 232, 615 P.2d 780 (1980). But see *Bordell v. General Elec. Co.*, 88 N.Y.2d 869, 667 N.E.2d 922, 644 N.Y.S.2d 912 (1996) (requiring that employee oppose actual violation of law before employee is protected from retaliation by employer).

Solid public policy reasons also validate the propriety of requiring a reasonable, good faith belief while not requiring an

actually unlawful practice. First, unless we interpret FEPA to require a reasonable, good faith belief, employees who fear dismissal could exploit FEPA by filing a frivolous claim and threatening their employer with a lengthy and costly retaliation suit. Conversely, were we to interpret FEPA to require that the act opposed actually be unlawful before FEPA protects the employee, employees would stop sincere, informal opposition to perceived illegality.

 The best rule is that an employee is protected by FEPA from employer retaliation for his or her opposition to an act of the employer only when the employee reasonably and in good faith believes the act to be unlawful. Under this rule, Wolfe needs a reasonable, good faith belief that BD broke the law when it subjected him to the disciplinary actions over his complaints about his coworkers using illegal drugs—the basis for his original NEOC filing. If he can show this, he has shown a prima facie retaliation claim.

 In order for such a belief to be reasonable, the act believed to be unlawful must either in fact be unlawful or at least be of a type that is unlawful. The discrimination Wolfe alleges must be of a type which at some level is prohibited by law. As the Seventh Circuit Court of Appeals stated in *Hamner, supra,* "[i]f a plaintiff opposed conduct that was not proscribed by [law], no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Id.* at 707 (dismissing as unreasonable underlying claim of sexual orientation discrimination because such discrimination did not violate any federal employment law). See, also, *Wimmer v. Suffolk County Police Dept.,* 176 F.3d 125 (2d Cir. 1999) (holding that opposition to employees' racial discrimination against public cannot form basis of retaliation claim because that discrimination does not violate title VII). Since an employer breaks no law by leveling adverse employment ramifications against an employee who complained about the non-work-related unlawful actions of coworkers, Wolfe's opposition to the disciplinary actions cannot form a reasonable belief that he opposed an unlawful practice of the employer.

Wolfe, therefore, fails in his second assignment of error. Wolfe's belief that the disciplinary actions were unlawful must

not only be in good faith, it must also be reasonable. As a matter of law it was not. Therefore, no issue of material fact regarding Wolfe's retaliation claim exists.

Finally, Wolfe's third assignment of error is without merit. The employer in an employment discrimination case does not need to proffer any reason for its actions until the plaintiff establishes a prima facie case that unlawful discrimination has occurred. *Father Flanagan's Boys' Home v. Agnew,* 256 Neb. 394, 590 N.W.2d 688 (1999); *IBP, inc. v. Sands,* 252 Neb. 573, 563 N.W.2d 353 (1997). Since Wolfe never established that prima facie case, the district court never had need to inquire of BD's motives in dismissing Wolfe. The court did not make any findings in its summary judgment regarding BD's proffered reasons for dismissing Wolfe. This was not error.

## CONCLUSION

For all of the above reasons, we affirm the judgment of the district court.

AFFIRMED.